IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LINDA JACKSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | |
| | § | |
| OCWEN LOAN SERVICING, LLC and | § | |
| U.S. BANK NATIONAL ASSOCIATION, | § | |
| AS TRUSTEE, SUCCESSOR IN | § | No. 3:17-cv-2387-G-BN |
| INTEREST TO BANK OF AMERICA, | § | |
| NATIONAL ASSOCIATION, AS | § | |
| TRUSTEE, SUCCESSOR BY MERGER | § | |
| TO LASALLE NATIONAL BANK, AS | § | |
| TRUSTEE FOR BCF, LLC | § | |
| MORTGAGE PASS-THROUGH | § | |
| CERTIFICATES, SERIES 1997-R3, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned United States magistrate judge

for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference

from Senior United States District Judge A. Joe Fish.

Defendants Ocwen Loan Servicing, LLC ("Ocwen") and U.S. Bank, National

Association, as Trustee, Successor in Interest to Bank of America, National

Association, as Trustee, Successor by Merger to LaSalle National Bank, as Trustee for

BCF, LLC Mortgage Pass-Through Certificates, Series 1997-R3 ("U.S. Bank"; with

Ocwen, "Defendants") filed a Motion to Dismiss [Dkt. No. 10].

Defendant Linda Jackson filed a response, *see* Dkt. No. 21, and Defendants filed

a reply, *see* Dkt. No. 23.

For the reasons and to the extent explained below, the undersigned concludes that Defendants' Motion to Dismiss [Dkt. No. 10] should be granted in part.

## Background

In April 1986, Ms. Jackson and her late husband, James E. Smith, purchased a home in Dallas, Texas (the "Property"). They signed a promissory note (the "Note") to finance the purchase. And Ms. Jackson and Mr. Smith secured the Note through a Deed of Trust pledging their interest in the Property as security (the "Deed of Trust").

The Note and Deed of Trust (collectively, the "Loan") were eventually assigned to Defendant U.S. Bank. Defendant Ocwen services the Loan.

On March 6, 2006, Ms. Jackson filed for Chapter 13 bankruptcy protection in U.S. Bankruptcy Court for the Northern District of Texas (Case No. 06-30994-bjh13). Ms. Jackson's plan was confirmed on June 20, 2006, and she received a discharge on May 25, 2011.

On July 28, 2017, Ms. Jackson filed suit in the 116th Judicial District of Dallas and claimed that, although she had satisfied her obligations under the Loan, Defendants were requesting payments that Ms. Jackson did not owe, declaring Ms. Jackson in default, and threatening to foreclose on the Property. After Ms. Jackson was granted a temporary restraining order, Defendants removed the case to this Court.

Ms. Jackson's First Amended Complaint alleges that Defendants (1) violated the Texas Deceptive Trade Practices Act ("DTPA") when they "used false, misleading, or deceptive acts or practices in the conduct of trade or commerce," Dkt. No. 8 at ¶ 23; (2)

2

violated the Texas Debt Collection Act ("TDCA") when they issued collection notices and billing statements containing erroneous information, collected improper amounts, and, through their agent, told Ms. Jackson that she would lose title to the Property, *see id.* at ¶¶ 28-32; (3) were negligent in "reporting Plaintiff's loan in default, issuing collection notices and balance statements that contained erroneous information, collecting money not authorized to collect under the contract, demanding additional money owed, and scheduling the home for foreclosure," *id.* at ¶ 36; (4) were grossly negligent "when[,] for over fourteen months, they failed to resolve this account, failed to release the lien, and charged and received more money that what was authorized under the agreement," *id.* at ¶ 41; and (5) engaged in unreasonable collection by charging and accepting an amount over what was owed on the Loan, continuing to demand additional funds, and threatening to foreclosure on Ms. Jackson's Property, *see id.* at ¶¶ 43-44.

On these bases, Ms. Jackson seeks a permanent injunction prohibiting Defendants from foreclosing on the Property and ordering them to delete negative trade lines on her credit since June 2016, declaratory relief establishing that Ms. Jackson no longer owes on the Loan, and recovery of actual damages representing the excess amount that she has paid on the Loan, mental anguish damages, and exemplary damages.

In their Motion to Dismiss, Defendants ask the Court to dismiss all of Ms. Jackson's claims against them with prejudice.

3

Defendants first argue that each of Ms. Jackson's claims fails under Federal Rule of Civil Procedure 8 because "Plaintiff's global and undifferentiated allegations against all defendants fails to give Defendants adequate notice as to what they each allegedly did wrong." Dkt. No. 10 at ¶ 1.

Defendants maintain that Ms. Jackson's DTPA claim fails as a matter of law because Ms. Jackson is not a "consumer" under the statute.

Defendants argue that Ms. Jackson's TDCA claim fails as a matter of law because Ms. Jackson has not pleaded a misrepresentation and is judicially estopped from pleading a position inconsistent with the position she advanced in her bankruptcy case.

Defendants assert that Ms. Jackson's negligence, gross negligence, and unreasonable collection claims fail as a matter of law because they are barred by the economic loss doctrine. Defendants further contend that Ms. Jackson's "negligence and gross negligence claims otherwise fail as a matter of law because Defendants owe no special duty to Plaintiff," *id.* at ¶ 5, and that "Plaintiff's unreasonable collection claim fails as a matter of law because Plaintiff fails to plead sufficient facts demonstrating that Defendants engaged in any egregious or unreasonable collection activity," *id.* at ¶ 6.

And Defendants contend that, because all of Ms. Jackson's underlying claims fail as a matter of law, Ms. Jackson is not entitled to the injunctive and declaratory relief that she seeks.

**Legal Standards**

In deciding a Federal Rule of Civil Procedure 12(b)(6) motion, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). To state a claim upon which relief may be granted, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, a plaintiff must allege more than labels and conclusions, and, while a court must accept all of the a plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic

recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.* But, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that the plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 347 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *accord N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) ("To survive a Rule 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, but it must provide the plaintiff's grounds for entitlement to relief – including factual allegations that, when assumed to be true, raise a right to relief above the speculative level." (footnote and internal quotation marks omitted)).

The United States "Supreme Court has made clear that a Rule 12(b)(6) motion turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (quoting *Johnson*, 135 S. Ct. at 347), and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 135 S. Ct. at 346.

A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495

F.3d at 205. Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). "Although the [United States Court of Appeals for the] Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

In addition, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"). And "[t]here is nothing improper about the district court considering the content of briefing that supports or opposes a motion

7

under Rule 12(b)(6) when deciding such a motion" – although "[w]hen matters outside the pleadings are presented to the court in connection with a motion under Rule 12(b)(6), the motion must be treated as a Rule 56 motion for summary judgment and appropriate notice given to the parties." *Turnage v. McConnell Techns., Inc.*, 671 F. App'x 307, 309 (5th Cir. Dec. 12, 2016). The Fifth Circuit has held "that briefs and oral arguments in connection with the motion ... are not considered matters outside the pleadings for purposes of conversion." *Id.* (internal quotation marks and citations omitted).

## Analysis

Defendants move to dismiss all of Ms. Jackson's claims against them for violations of the TDCA and DTPA, negligence, gross negligence, and unreasonable collection efforts.

Because, in her response, Ms. Jackson withdraws her DTPA claim, *see* Dkt. No. 21 ¶ 2, that claim should be dismissed without prejudice.

As to Ms. Jackson's remaining claims, the undersigned concludes that Ms. Jackson's allegations against "Defendants" are too general to state a claim. The undersigned further concludes that Ms. Jackson's negligence, gross negligence, and unreasonable collection efforts claims are barred by the economic loss rule and should be dismissed with prejudice and that, although Ms. Jackson has pleaded a misrepresentation and is not judicially estopped from making her claims under the TDCA, her TDCA claim should be dismissed without prejudice because her allegations are too general to state a plausible claim to relief.

8

I. <u>Ms. Jackson's allegations against "Defendants" are too general to state a claim.</u>

 Defendants argue that Ms. Jackson's "global and undifferentiated allegations against all defendants fail to give Defendants adequate notice as to what they each allegedly did wrong as required under Rule 8 of the Federal Rules of Civil Procedure." Dkt. No. 11 at 12 of 28. They contend that, "[w]here a complaint simply lumps defendants together, as is the case here, and fails to distinguish their conduct, as is also the case here, any allegations against such defendants" fail to satisfy the pleading standards of Rule 8. *Id.*

 The undersigned agrees and concludes that Ms. Jackson's global allegations against Defendants are too general to state a claim.

 Federal Rule of Civil Procedure 8 requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

 Ms. Jackson contends that "Defendants have not cited any authority prohibiting Plaintiff from alleging the same claims and pleading the same facts against both Defendants who are bad actors" and that the cases to which Defendants cite are distinguishable from this case. Dkt. No. 22 at ¶ 17.

 In support of their argument that Ms. Jackson's allegations fail under Rule 8, Defendants cite to the United States Court of Appeals for the Fifth Circuit's opinion in *Chyba v. EMC Mortg. Corp.*, 450 F. App'x 404, 406 (5th Cir. 2011) (unpublished), and various district court decisions, including *Bittick v. JPMorgan Chase Bank, N.A.*, No. 4:11-cv-812-A, 2012 WL 1372126, at *7 (N.D. Tex. Apr. 18, 2012) and *Washington v.*

9

*U.S. Dep't of Housing & Urban Dev.*, 953 F. Supp. 762, 770 (N.D. Tex. 1996).

In *Chyba*, the plaintiff directed claims at – in addition to the defendant who moved to dismiss – eight unnamed defendants who were not served with process. In dismissing, for various reasons, the plaintiff's claims against the moving defendant, the district court found that "Plaintiff's vague allegations of malfeasance by a global group of unspecified 'defendants' – without alleging any particular acts by the [moving] [d]efendant – provided an additional reason to dismiss the suit." *Chyba*, 450 F. App'x at 406.

Ms. Jackson argues that *Chyba* has limited factual relevance here, because, unlike the plaintiff in *Chyba*, Ms. Jackson has specifically named and served Ocwen and U.S. Bank, the only two defendants in this case. But the district court's rationale in dismissing the *Chyba* plaintiff's claims against the moving defendant centered on the plaintiff's failure to allege particular acts by that defendant – not on the fact that multiple other defendants remained unidentified and unserved. Ms. Jackson's focus on the service, number, and identity of the *Chyba* defendants does not persuasively distinguish *Chyba* from this case, where Ms. Jackson's Amended Complaint makes almost no distinction between U.S. Bank and Ocwen's actions giving rise to her claims.

Ms. Jackson attempts to distinguish *Bittick* by arguing that the plaintiff's failure to meet the heightened standard of Federal Rule of Procedure 9 in pleading his fraud claim was the reason that the *Bittick* court dismissed the plaintiff's claims. *See* Dkt. No. 22 ¶ 19. And the *Bittick* court did dismiss the plaintiff's fraud-based claims for failure

to satisfy Rule 9's particularity standard. *See* 2012 WL 1372126, at \*5-\*6. But, in also dismissing two of the plaintiff's non-fraud claims, which were governed by Rule 8's ordinary pleading standards, the court articulated a different rationale. *See id.* at \*7. Because, among other deficiencies, the plaintiff failed to distinguish between the two defendants in pleading his non-fraud claims, the court held that it was "therefore not apparent to the court which allegations are directed against a particular defendant." *Id.*

And, in *Washington*, which Ms. Jackson did not address in her response, the court reached a similar conclusion. The *Washington* court dismissed a plaintiff's intentional and negligent misrepresentation, DTPA, and fraud claims because the plaintiff "merely made global allegations that *Defendants* made representations to her," that "*Defendants* made these representations, knowing they were not true," and that, through the plaintiff's reliance on these representations, "*Defendants* caused her to" act to her detriment. 953 F. Supp. at 770 (emphasis in original). Without differentiating between Rule 8 and Rule 9 standards, the court made clear that, to survive dismissal, a "[p]laintiff must specify in how each [d]efendant committed the acts or omissions which form the basis of her ... claims." *Id.*; *see also Taylor v. IBM*, 54 F. App'x 794, No. 02-10391, 2002 WL 31845220, at \*1 (5th Cir. Dec. 10, 2002) (unpublished) ("Appellants failed to allege specific acts of infringement by each defendant, thereby failing to adhere to the requirements of FED. R. CIV. P. 8(a)."); *Springboards to Educ., Inc. v. Kipp Found.*, No. 3:16-cv-2436-G, 2017 WL 3917701, at \*4 (N.D. Tex. Sept. 7, 2017) (collecting cases in which district courts within the Fifth Circuit have dismissed claims because a

11

plaintiff failed to distinguish between defendants in making her allegations).

Still, Ms. Jackson contends that because "[b]oth Defendants committed the conduct that gives rise to the Plaintiff's claims .... [t]he claims against both Defendants are inextricably intertwined." Dkt. No. 21 ¶ 1. But she cites no authority to support her position, and her bare argument cannot outweigh the case law that requires a plaintiff to distinguish between the acts of multiple defendants in alleging the basis of her claims.

The undersigned concludes that, because Ms. Jackson's allegations are too general to state a claim against Defendants, her claims against Ocwen and U.S. Bank should be dismissed.

Ms. Jackson argues that, even if the Court finds Ms. Jackson's pleading too general and broad, amendment – and not dismissal – is proper. But Defendants fully briefed their Motion to Dismiss under the alternative assumption that Ms. Jackson's pleading satisfies Rule 8's requirements, arguing that other deficiencies cause Ms. Jackson's claims to fail as a matter of law such that amendment would be futile. The undersigned addresses those arguments below to determine whether Ms. Jackson's claims should be dismissed with or without prejudice.

II.    Ms. Jackson's negligence, gross negligence, and unreasonable collection claims are barred by the economic loss rule and fail as a matter of law.

Under Texas law, if a tort claim arises solely from the parties' contractual relationship, the tort claim is not allowed. *See DeFranceschi v. Wells Fargo Bank, N.A.*, 837 F. Supp. 2d 616, 625-26 (N.D. Tex. 2011). The economic loss rule "generally

precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007) (citing *Sw. Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494-95 (Tex. 1991)). "That is, 'a duty in tort does not lie when the only injury claimed is one for economic damages recoverable under a breach of contract claim.'" *McDaniel v. JPMorgan Chase Bank, N.A.*, No. 1:12-cv-392, 2012 WL 6114944, at *7 (E.D. Tex. Dec. 10, 2012) (quoting *Sterling Chems., Inc. v. Texaco Inc.*, 259 S.W.3d 793, 796 (Tex. App. – Hous. [1st Dist.] 2007, pet. denied)). "Tort damages are recoverable, however, if the conduct 'would give rise to liability independent of the fact that a contract exists between the parties.'" *Johnson v. Wells Fargo Bank, N.A.*, 999 F. Supp. 2d 919, 930 (N.D. Tex. Feb. 2014) (quoting *Lamar Homes*, 242 S.W.3d at 12).

"In determining whether a tort claim is merely a repackaged breach of contract claim, a court must consider: (1) whether the claim is for breach of duty created by contract, as opposed to a duty imposed by law; and (2) whether the injury is only the economic loss to the subject of the contract itself." *Stanley Indus. of S. Fla. v. J.C. Penney Corp., Inc.*, No. 3:05-cv-2499-L, 2006 WL 2432309, at *5 (N.D. Tex. Aug. 18, 2006) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 45-47 (Tex. 1998)); *see also DeLanney*, 809 S.W.2d at 494-95.

Defendants argue that they did not owe Ms. Jackson a legal duty independent of the Loan and that Ms. Jackson has not alleged any damages outside of the purported economic losses arising from the subject matter of the Loan. Although Defendants

13

briefed the independent legal duty issue as separate from the economic loss rule issue, whether Ms. Jackson's claims are for breach of an independent legal duty is a factor that the Court properly considers in the economic loss rule analysis.

Because, although Defendants owed Ms. Jackson a legal duty, Ms. Jackson's claims and the damages that she seeks are based on Defendants' violation of the contract (that is, the Loan), the undersigned concludes that Ms. Jackson's negligence, gross negligence, and unreasonable collection claims arise out of her contractual relationship with Defendants and that they should be dismissed with prejudice.

A.   <u>Ms. Jackson does not bring claims for breach of an independent duty.</u>

Ms. Jackson's tort claims are based on Defendants' violation of the Loan (that is, her contract with Defendants) and not on their violation of an independent legal duty.

Although there exists no "special" or fiduciary relationship between a mortgage servicer and borrower, or a lender and borrower, "a lender may still owe a borrower the duty to exercise reasonable care to avoid a foreseeable risk of injury to the borrower." *Neresova v. Suntrust Mortg., Inc.*, No. 3:11-cv-976-BH, 2011 WL 13127891, at *7 (N.D. Tex. Nov. 16, 2011) (citing *In re Thrash*, 433 B.R. 585, 597-98 (N.D. Tex. 2010)); *see also Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 763 (N.D. Tex. 2012).

And, despite the nonexistence under Texas law of a duty between a mortgage servicer and borrower, or between a lender and borrower, Texas courts have held that "there is always a duty to correct one's own prior false or misleading statement." *See Hurd*, 880 F. Supp. 2d at 763 (citing *Nazareth Int'l, Inc. v. J.C. Penney Corp., Inc.*, 2005 WL 1704793, at *6 (N.D. Tex. July 19, 2005) (citing *Trs. of the Nw. Laundry & Dry*

*Cleaners Health & Welfare Tr. Fund v. Burzynski*, 27 F.3d 153, 157 (5th Cir.1994)).

In her Amended Complaint, as to her negligence claim, Ms. Jackson alleges that "Defendants' reporting Plaintiff's loan in default, issuing collection notices and balance statements that contained erroneous information, collecting money not authorized to collect under the contract, demanding additional money owed, and scheduling the home for foreclosure all violate a duty of reasonable care." Dkt. No. 8 at ¶ 36.

And, as to Ms. Jackson's gross negligence claim, she alleges that "Defendants acted grossly negligent when for over fourteen months, they failed to resolve this account, failed to release the lien, and charged and received more money than what was authorized under the agreement." *Id.* at ¶ 41.

As Defendants point out, Ms. Jackson's negligence and gross negligence claims are based on Defendants' violating duties under the Loan. Ms. Jackson argues that, despite her alleged satisfaction of her obligations under the Loan, *see id.* at ¶ 39, Defendants have failed to fulfill their obligations under the Loan contract in return – issuing collection notices and balance statements indicating that Ms. Jackson still owed on the Loan, reporting her account as delinquent to third parties, over-collecting on the Loan, demanding payments not owed on the Loan, failing to release their lien, and threatening to exercise their right under the Loan to foreclose. The crux of Ms. Jackson's claim is that Defendants have not held up their end of the bargain despite her satisfying her own obligations under the Loan, and, to the extent that Ms. Jackson's negligence and gross negligence claims are based only on Defendants' violating the Loan, they are barred by the economic loss rule. *See Lamar Homes*, 242 S.W.3d at 12.

In her response, Ms. Jackson argues that her tort claims are not based on Ocwen's failure to perform its duties as a servicer under the Deed of Trust or on U.S. Bank's violation of the Loan. Ms. Jackson contends that her claims are instead based on Defendants' breach of their independent duty to correct their false statements after Ms. Jackson submitted proof that she had paid more than she owed on the Loan. *See* Dkt. No. 22 at ¶ 42 ("Plaintiff's negligence and gross negligence claims against Defendant stem from breaching that independent duty to correct the false and misleading statements it made regarding Plaintiff. Plaintiff submitted proof that she made payments in excess of what she owed.").

But the allegations in Ms. Jackson's Amended Complaint do not support her argument that her negligence and gross negligence claims are actually based on Defendants' failure correct their prior statements. In her Amended Complaint, Ms. Jackson pleads that Defendants violated a duty of reasonable care by – in addition to demanding, collecting, and attempting to collect more money than what the Loan allowed – reporting her account as delinquent and issuing erroneous collection notices and bank statements after Ms. Jackson allegedly paid off the Loan. *See* Dkt. No. 8 at ¶ 36. Although she takes issue with Defendants' failure to mark her account as paid, liberally construing her allegations, Ms. Jackson's negligence and gross negligence claims arise from her allegations that she fulfilled her obligations under the Loan contract and Defendants failed to do the same.

And Ms. Jackson does not allege in her Amended Complaint that Defendants' alleged failure to correct its prior misstatements caused her alleged damages. Ms.

16

Jackson specifically alleges that the cause of her mental anguish is Defendants' alleged disregard for their obligations under the Loan: "Plaintiff sustained mental anguish ... because she knows that although she has fully complied with her loan obligations, Defendants continue to demand additional money, and are trying to steal her home." Dkt. No. 8 at ¶ 39.

Because Ms. Jackson's negligence and gross negligence claims, although presented as sounding in tort, are based on the parties' duties under the Loan, and because her claims would not exist but for the Note and Deed of Trust, *see Johnson*, 999 F. Supp. 2d at 930, Ms. Jackson's negligence and gross negligence claims are barred by the economic loss rule.

And, like her negligence and gross negligence claims, Ms. Jackson's unreasonable collection claim is barred by the economic loss rule because it is based on Defendants' alleged failure to comply with the Loan – specifically by Defendants' demanding, accepting, and attempting to collect payments that Ms. Jackson allegedly does not owe. Explaining the basis for her unreasonable collection claim, Ms. Jackson alleges in her Amended Complaint that

> Defendants charged[] and accepted an amount in excess [of] what was owed on Plaintiff's Loan. And [Defendants] continue to demand additional funds from Plaintiff[,] and when Plaintiff disputed the amounts, Defendants informed Plaintiff that the title to her home would be transferred on September 5, 2017.
> ...
> Defendants have harassed Plaintiff by constantly contacting her, demanding her pay additional funds, and threatening foreclosure trying to collect the additional money.

Dkt. No. 8 at ¶¶ 43-44.

17

Because her negligence, gross negligence, and unreasonable collection claims arise from Defendants' alleged violation of the Loan and not from Defendants' violation of an independent duty, Ms. Jackson's negligence, gross negligence, and unreasonable collection claims are barred by the economic loss rule.

> B.   Ms. Jackson's claims are not based on a non-economic injury separate from the economic loss subject to the Loan.

Even if Ms. Jackson's negligence, gross negligence, and unreasonable collection efforts claims are truly based on Defendants' violation of an independent legal duty – either to exercise reasonable care or to correct previous false or misleading statements – her claims are nonetheless barred by the economic loss rule because Ms. Jackson seeks to recover only the economic benefit of her bargain with Defendants.

The economic loss rule "restricts contracting parties to contractual remedies for economic losses associated with their relationship, 'even when the breach might be reasonably viewed as a consequence of a contracting party's negligence.'" *McDaniel*, 2012 WL 6114944, at *7 (quoting *Lamar Homes*, 242 S.W.3d at 13). "The focus of the rule 'is on determining whether the injury is to the subject of the contract itself.'" *Acad. of Skills & Knowledge, Inc. v. Charter Schs., USA, Inc.*, 260 S.W.3d 529, 541 (Tex. App. – Tyler 2008, pet. denied) (quoting *Lamar Homes*, 242 S.W.3d at 12). And "[t]he burden is on the plaintiff to establish evidence of an independent injury." *McDaniel*, 2012 WL 6114944, at *7 (citing *Esty v. Beal*, 298 S.W.3d 298, 302 (Tex. App. – Dallas 2009, no pet.)).

Here, Ms. Jackson claims damages for "amount in excess she has paid as a result

of the Defendants' wrongful conduct" and for her alleged mental anguish. Dkt. No. 8 at ¶ 20. She also asks the Court to declare her Loan paid off, permanently enjoin Defendants from foreclosing on the Property, and award other equitable relief.

Ms. Jackson argues that her alleged mental anguish damages and requests for equitable relief save her tort claims from the economic loss rule and contends that her mental anguish damages are not barred by the economic loss rule, citing to *Hernandez v. Servis One, Inc.*, No. 4:15-cv-596, 2017 WL 2644641, at *9 (E.D. Tex. June 20, 2017).

Although mental anguish damages are a form of non-economic loss, they are not always permitted in the face of the economic loss rule. In *Hernandez*, to which Ms. Jackson cites, the court held that the plaintiffs' tort claims were not barred by the economic loss rule, in part because the plaintiffs identified distinct mental anguish damages, among other forms of non-economic loss, which arose "from Defendants' negligent failure to correct Plaintiffs' account and Defendants' continued negative reporting to crediting agencies after receiving evidence that Plaintiffs were not in default" and not "from the economic harm caused by the failure to properly service the loan." 2017 WL 2644641, at *9.

Other courts have held that litigants cannot avoid application of the economic loss rule by merely alleging mental anguish damages where the plaintiff's claims for mental anguish stem from the defendant's breach of contract. *See Opheim v. Wells Fargo Bank*, No. 3:16-cv-1097-N-BK, 2016 WL 8715662, at *2-*3 (N.D. Tex. Nov. 9, 2016) ("Although Plaintiff attempts to circumvent the economic loss rule by framing Defendants' tortious conduct as causing him anxiety, embarrassment, and financial

19

difficulty, such claims stem from the parties' contract."); *Thompson v. Bank of America, N.A.*, 13 F. Supp. 3d 636, 653 (N.D. Tex. 2014) (applying the economic loss rule despite plaintiff's alleging mental anguish and emotional distress because, among other reasons, "it is clear that these alleged damages flow solely from the obligations created by the Note and Deed of Trust and would not exist but for the contractual relationship of the parties"); *Jones v. Wells Fargo Bank, N.A.*, No. 4:12-cv-446, 2013 WL 4414321, at *2, *14 (E.D. Tex. Aug. 13, 2013) (rejecting the plaintiffs' argument that, because they seek extra-contractual damages like mental anguish, their tort claim should not be dismissed); *Miller v. CitiMortgage, Inc.*, 970 F. Supp. 2d 568, 576 (N.D. Tex. 2013) ("[C]laims involving mental anguish cannot allow Plaintiff to subvert the effect of the economic loss rule."); *Sanghera v. Wells Fargo Bank, N.A.*, No. 3:10-cv-2414-B, 2012 WL 555155, at *6 (N.D. Tex. Feb. 21, 2012) (holding that the plaintiffs' assertion of mental anguish damages, among others, did not circumvent the economic loss rule.).

In her response, Ms. Jackson argues that Defendants falsely represented to Ms. Jackson and third parties that Ms. Jackson was in default when they knew otherwise. *See* Dkt. No. 22 at ¶ 45. She further asserts that her mental anguish damages stem, not from Defendants' violation of the Note and Deed of Trust, but from "their failure to correct their misrepresentations." *Id.* at ¶ 51.

But, liberally construing the allegations in Ms. Jackson's Amended Complaint and assuming their truth, Ms. Jackson's tort claims and the damages that she seeks arise not from Defendants' duty to correct false statements but from the parties'

contractual relationship. In her Amended Complaint, Ms. Jackson alleges that she

> sustained mental anguish ... because she knows that although she has
> fully complied with her loan obligations, Defendants continue to demand
> additional money, and are trying to steal her home. Her mental anguish
> is caused by the fact that she literally has no control over when the
> Defendants will ever stop trying to take her home, or when Defendants
> will stop reporting her account as delinquent; or if Defendants will ever
> stop demanding additional funds that are simply not owed.
> ...
> Plaintiff's mental anguish is caused by the fact that she knows that she
> has paid her loan off in full, yet the Defendants continue the constant
> collections, the past due letters, the foreclosure notices; and she knows the
> only way out is to pay money she does not have and does not owe.

Dkt. No. 8 at ¶¶ 39-40; *see also id.* ¶¶ 48-49.

As alleged, Ms. Jackson's mental anguish damages flow from Defendants'
accepting and attempting to collect payments, threatening to foreclose on the Property,
and reporting her account as delinquent, all despite Ms. Jackson's paying off the Loan
– in other words, from Defendants' failure to give Ms. Jackson her benefit of the bargain
under the Loan after receiving theirs. And because, without the Note and Deed of Trust,
Ms. Jackson's tort claims and the damages she seeks would not exist, *see Thompson*, 13
F. Supp. 3d at 653*,* her alleged mental anguish damages cannot circumvent the
economic loss rule.

Ms. Jackson argues that her requests for equitable relief can otherwise save her
tort claims from the economic loss rule. In her Amended Complaint, Ms. Jackson
requests two forms of equitable relief: (1) a declaration "that Defendants no longer
maintain any security interest in [the Property], that the Note is paid in full[,] and
[that] the Deed of Trust securing the [Property] is no longer valid"; and (2) a permanent

injunction "ordering Defendants to delete all negative trade lines on the Plaintiff's credit that were reported from June 2016 to the present," restraining Defendants from foreclosing on the Property, and requiring Defendants to release their lien on the Property. Dkt. No. 8 at 11-12.

But Ms. Jackson, in her response, cites to no case in which a court has held that claims accompanying requests for equitable relief can escape the economic loss rule, and it is Ms. Jackson's burden to prove her independent injury.

And the undersigned notes that at least one other court within the Fifth Circuit has considered whether a claim for injunctive relief, which is not purely economic loss, can sustain a tort claim under the economic loss rule:

> [B]ecause the economic-loss doctrine is "designed to maintain a distinction between damage remedies for breach of contract and for tort," *SMI Owen Steel Co. v. Marsh USA, Inc.*, 520 F.3d 432, 441-42 (5th Cir. 2008) (internal quotation marks omitted), courts have refused to find that such requests [for punitive damages, injunctive relief and attorneys' fees that are not purely economic loss damages] are sufficient to overcome dismissal of a tort claim based solely on damages to the product itself. *See, e.g.*, *Schaefer v. IndyMac Mortg. Servs.*, No. 12-cv-159-JD, 2012 WL 4929094, at *3 (D.N.H. Oct. 16, 2016) (injunction request did not bar dismissal of negligence claims under economic-loss doctrine); *Theuerkauf v. United Vaccines Div. of Harlan Sprague Dawley, Inc.*, 821 F. Supp. 1238, 1242 (W.D. Mich. 1993) (noting that allowing plaintiffs to defeat economic-loss doctrine by seeking punitive damages "would swallow the [d]octrine").

*Clark v. General Motors*, No. 3:14-cv-505-DPJ-FKB, 2016 WL 3574408, at *6 (S.D. Miss. June 23, 2016).

The undersigned finds the reasoning of *Clark*, and the cases that it cites, persuasive and concludes that Ms. Jackson's requests for injunctive and declaratory relief do not save her tort claims from the economic loss rule.

Because Ms. Jackson's mental anguish damage is dependent on the existence of the Loan, and because her requests for equitable relief cannot shield her tort claims from the economic loss rule, Ms. Jackson has not met her burden of proving an independent injury, and the economic loss rule applies to bar her negligence, gross negligence, and unreasonable collection efforts claims.

III.    Ms. Jackson has pleaded a misrepresentation and is not judicially estopped from asserting a TDCA claim.

Ms. Jackson brings claims against Defendants under two sections of the TDCA, Texas Finance Code §§ 392.303 and 392.304.

Defendants argue that Ms. Jackson's TDCA claims fail because Ms. Jackson has not pleaded a misrepresentation and cannot take a position here that is inconsistent with her position in her bankruptcy case.

Ms. Jackson contends that she pleaded multiple misrepresentations throughout her complaint and that she "does not dispute any position from her bankruptcy and agrees with all amounts owed post-discharge." Dkt. No. 21 at ¶ 3.

The undersigned concludes that Ms. Jackson has pleaded a misrepresentation and is not judicially estopped from asserting her TDCA claims, but because, as previously explained, her general allegations against "Defendants" are too general to state a claim, her TDCA claims should be dismissed without prejudice.

A.    Ms. Jackson has pleaded a misrepresentation under the TDCA.

Defendants do not distinguish between Ms. Jackson's Section 392.303 and Section 392.304 claims in their Motion to Dismiss and argue that Ms. Jackson's "claim"

under the TDCA should be dismissed because Ms. Jackson failed to plead a misrepresentation.

Texas Finance Code § 392.304(a) prohibits a debt collector from using "a fraudulent, deceptive, or misleading misrepresentation" that employs certain enumerated practices in attempting to collect a debt or obtain consumer information. TEX. FIN. CODE. § 392.304(a).

Texas Finance Code § 392.303 prohibits a debt collector from using "unfair or unconscionable means that employ" certain enumerated practices listed in its subsections. By its terms, Section 392.303 does not require a plaintiff to state a misrepresentation, and the undersigned applies Defendants' misrepresentation argument in assessing only whether Ms. Jackson has stated a Section 392.304(a) claim, which does require a plaintiff to plead a misrepresentation.

Here, Ms. Jackson alleges that Defendants violated the TDCA when it "sent several collection notes and balance statements misstating the amounts owed on Plaintiff's Loan when the Loan was in fact paid in full." Dkt. No. 8 at ¶ 28. Specifically, Ms. Jackson states that her confirmed bankruptcy plan provided that she pay $34,832.74 in arrearages and $109,007.48 to payoff the Loan, $143,840.22 in total. *See id.* at ¶¶ 12-13. Ms. Jackson alleges that she paid $42,085.30 toward the arrearages and more than $143,000.00 toward the payoff, paying more than $186,000.00 in total as of May 2016, the Note's maturity date. *See id.* at ¶¶ 12-14.

And Ms. Jackson alleges that, although she had paid more than she owed on the Loan, Defendants claimed that she still owed $33,330.46. *See id.* at ¶ 16. She also

alleges that, on June 15, 2017, Defendants, through their agent, told Plaintiff that she had to pay $40,210.48 to retain title to her Home. *See id.* at ¶ 18.

Assuming Ms. Jackson's allegations to be true, and that Defendants told Ms. Jackson that she owed more money on the Loan after she had paid it off, Ms. Jackson has adequately pleaded that Defendants misrepresented to her the amount owed on the Loan.

B.    Ms. Jackson is not judicially estopped from asserting her TDCA claims.

Defendants argue that Ms. Jackson is judicially estopped from asserting her TDCA claims because she did not disclose her potential TDCA claims against Defendants in her bankruptcy case.

Ms. Jackson argues that she is not judicially estopped from asserting her TDCA claims because they accrued after the bankruptcy proceedings.

The undersigned concludes that, because Ms. Jackson's TDCA claim is based on events that occurred after she filed for bankruptcy and received a discharge, Ms. Jackson is not judicially estopped from asserting her TDCA claims.

"The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Reed v. City of Arlington*, 650 F.3d 571, 573-74 (5th Cir. 2011) (en banc) (citation omitted). The purpose of this doctrine "is to protect the integrity of the judicial process, by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest." *In re Wakefield*, 293 B.R. 372, 378 (N.D. Tex.2003) (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir.1999) (internal quotation marks

25

and brackets omitted). In the bankruptcy context, "judicial estoppel must be applied in such a way as to deter dishonest debtors whose failure to fully and honestly disclose all their assets undermines the integrity of the bankruptcy system, while protecting the rights of creditors." *Reed*, 650 F.3d at 574.

Judicial estoppel applies to bar a claim when "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *Id.*

But, "if a claim did not accrue until after the bankruptcy proceedings, then judicial estoppel will not bar [the plaintiff] from bringing that claim." *Feuerbacher v. Wells Fargo Bank*, No. 4:15-CV-59, 2016 WL 3669744, at *7 (E.D. Tex. July 11, 2016), *aff'd*, 701 F. App'x 297 (5th Cir. 2017); *see also In re Meyrowitz*, No. 06-31660-BJH-11, 2010 WL 5292066, at *17 (N.D. Tex. Dec. 20, 2010) ("[I]f the claims pled by [the bankruptcy petitioner] in the Complaint accrued after his personal bankruptcy filing, there was nothing to disclose and judicial estoppel would not apply.").

"Under Texas law, '[c]auses of action accrue ... when facts come into existence that authorize a claimant to seek a judicial remedy.'" *Feuerbacher v. Wells Fargo Bank Nat'l Ass'n*, 701 F. App'x 297, 300 (5th Cir. 2017) (quoting *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 202 (Tex. 2011)).

Here, Ms. Jackson's TDCA claims are based on events that occurred after she filed for bankruptcy on March 6, 2006, after her plan was confirmed on June 20, 2006,

and after she received a discharge on May 25, 2011. Ms. Jackson alleges that, as of May 2016, the Note's maturity date, she had paid more than what she owed on the Loan under her bankruptcy Plan, and yet Ocwen claimed she owed $143,840.22. *See* Dkt. No. 8 at ¶ 14. She further explains that, since May 2016, Defendants have insisted that she owes additional money, *see id.* at ¶ 15, and that, on June 15, 2017, Defendants told Plaintiff that if she did not pay more, the title to her home would be transferred to Defendant U.S. Bank on September 5, 2017, *see id.* at ¶¶ 18, 20.

The undersigned thus concludes that, because Ms. Jackson's TDCA claims are based on events that occurred after she filed for bankruptcy and received a discharge, Ms. Jackson is not judicially estopped from making her TDCA claims based on those events.

Although Ms. Jackson has pleaded a misrepresentation and is not judicially estopped from making her TDCA claims, because, as explained above, her allegations against Defendants are too general to state a claim, Ms. Jackson's TDCA claims should be dismissed without prejudice.

IV.    Ms. Jackson's requests for equitable relief fail because she has not stated a viable <u>underlying claim.</u>

Defendants argue that Ms. Jackson's requests for declaratory and injunctive relief fail because Ms. Jackson has failed to assert any viable causes of action against Defendants.

Because the undersigned has concluded that Ms. Jackson's substantive claims should be dismissed, Ms. Jackson has not stated a claim for declaratory and injunctive

relief.

A request for declaratory judgment depends on a viable underlying cause of action. *See Collin Cnty. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 171 (5th Cir. 1990) ("[I]t is the underlying cause of action ... that is actually litigated in a declaratory judgment action.").

Likewise, where a Court dismisses all of a plaintiff's substantive claims, as the undersigned recommends the Court do here, a plaintiff cannot maintain a claim for injunctive relief. *See Thomas v. EMC Mortg. Corp.*, 499 F. App'x 337, 343 n.15 (5th Cir. 2012) ("[A] request for injunctive relief absent an underlying cause of action is fatally defective.").

Because the undersigned has concluded that Ms. Jackson failed to state a plausible claim to relief for violations of the TDCA and for negligence, gross negligence, and unreasonable collection, Ms. Jackson's claims for declaratory and injunctive relief should also be dismissed without prejudice.

The undersigned notes that Defendants also argue in their Motion to Dismiss that Ms. Jackson is not entitled to her attorney's fees. And because Ms. Jackson seeks attorney's fees as a remedy for her underlying claims, *see* Dkt. No. 8 at 12; Dkt. No. 22 at ¶ 78, her request for attorney's fees is dependent upon the viability of her underlying claims, including those for equitable relief. But Ms. Jackson's request for attorney's fees is not a separate claim subject to dismissal. *See W & T Offshore, Inc. v. Apache Corp.*, 918 F. Supp. 2d 601, 614 (S.D. Tex. 2013).

**Recommendation**

For the reasons discussed above, the Court should grant Defendants' Motion to Dismiss [Dkt. No. 10] in part. Specifically, the Court should dismiss Ms. Jackson's negligence, gross negligence, and unreasonable collection claims with prejudice and dismiss Ms. Jackson's TDCA claims and requests for declaratory and injunctive relief without prejudice. The Court should grant Ms. Jackson 21 days from the date of any order adopting these Findings, Conclusions, and Recommendation in which to file an amended complaint that repleads only her TDCA claims and requests for declaratory and injunctive relief, consistent with this recommendation and the conclusions and findings above, and should order that, if she fails to do so, her TDCA claims and requests for declaratory and injunctive relief against Defendants U.S. Bank and Ocwen will be dismissed with prejudice without further notice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal

29

conclusions of the magistrate judge that are accepted or adopted by the district court,

except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d

1415, 1417 (5th Cir. 1996).

DATED: January 8, 2018

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE